547 A.2d 379

**Lou Ann SCHMUCKER a/k/a Lou Ann Caldwell, Hanna and John R. Hanna, III,**

v.

**John R. HANNA, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted June 6, 1988.

Filed Aug. 30, 1988.

Michael R. Sweeney, Media, for appellant.

William G. Halligan, Media, for appellees.

Before MELINSON, HOFFMAN and HESTER, JJ.

HESTER, Judge:

John R. Hanna appeals from the order entered October 29, 1987, awarding $15,402.00 to appellees for the payment of room, board, books and tuition for appellee-son, John R. Hanna, III (hereinafter "John"). Appellant alleges that the trial court erred in concluding that a property settlement agreement obligated him to pay these expenses in light of his son's unwillingness and inability to succeed in college. Further, he claims the trial court erred in refusing to uphold an oral agreement between John and appellant, and that the court erred in awarding appellee-mother reimbursement for room and board. We find no merit to these assertions, and affirm.

In April, 1975, differences arose between appellant and his wife, leading to their separation. In anticipation of divorce, the parties agreed to and signed a post-nuptial agreement which provided, in pertinent part:

13. No modification of this Agreement shall be effective unless embodied in a written instrument executed by the parties. No forbearance to enforce any provision of this Agreement or waiver of any breach hereof shall be deemed a waiver of any such provision or right hereunder or of any subsequent breach or default. This Agreement shall not be deemed to constitute a condonation by either party of any act on the part of the other party, whether occurring prior or subsequent to the parties' separation from each other.

. . . .

11. Husband agrees that he will pay for the college education of the children, specifically tuition, room, board, and books. Choice of said college to be that of the children with the consent of the Husband. During the children's college educational period Wife shall pay to each child Twenty-five Dollars ($25.00) per week for spending money, provided, however, that Husband shall be paying support at the rate of One Hundred Dollars ($100.00) per week for the children as herein provided for.

Reproduced Record at 54(a), 61(a).

In 1980, John graduated from high school. In accordance with the provisions above, appellant agreed to send him to Penn State, refusing his son's first choice, the University of Maryland, based upon its expense.

John left Penn State in November, 1981, after compiling an uneven academic record. He returned to his mother's house and found work. He paid his own automobile insurance and $15.00 per week in rent for a limited period. He attended some classes at Penn State, in order to raise his academic average, and thereafter transferred to Widener University. Widener is appellant's alma mater, as well as his grandfather's, and it is apparent from the record that appellant did not object to Widener as a choice of college.

At some point, appellant and John entered into an oral agreement limiting the father's financial obligation to $4,000.00 per year for John's college education. On or about March 11, 1983, appellant presented John with a document attempting to alter the post-nuptial agreement by providing that appellant's obligation for educational expenses would be limited to $4,000.00 per year. John signed the document, but testified he felt pressured to do so. Appellee-mother, also presented with the document, refused to sign. Expenses at Widener are $1,600.00 more than the $4,000.00 per year appellant paid.

John graduated after satisfactorily completing studies at Widener University. He and his mother instituted the present action for costs not covered by appellant while John attended Widener. The suit alleged as costs the unpaid tuition, additional book costs, room and board for John while he resided with appellee-mother during his attendance at Widener.

On May 1, 1987, following a hearing, the trial court awarded tuition, costs, and room and board to appellees. Appellant filed a motion for post-trial relief which was denied. This appeal followed.

In its opinion, the trial court analyzed the post-nuptial agreement and found it clear and unambiguous. Further, it found that appellant failed to fulfill his obligations under the agreement. Finally, it rejected John's emancipation and the validity of the later agreement signed by John and his father as a basis for appellant's refusal to abide by the original agreement.

In *DeWitt v. Kaiser*, 335 Pa.Super. 258, 261–62, 484 A.2d 121, 123 (1984), quoting *Kleintop v. Kleintop*, 291 Pa.Super. 491, 436 A.2d 223 (1981), we stated:

> A property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applying to determining the validity of contracts generally.

In such a case, "the trial court is the sole determiner of the fact of the record, ... and, absent an abuse of discretion, the Superior Court will not usurp the trial court's fact-find-

ing function." *Nitkiewicz v. Nitkiewicz*, 369 Pa.Super. 504, 507, 535 A.2d 664, 665 (1988) (citation omitted); *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983).

The record is clear that appellant did not abide by the post-nuptial agreement as it related to financing John's college education. The contract states, "Husband agrees that he will pay for the college education of the children. . . ." John paid for the education on his own, with the $4,000 from appellant, and with loans and help from appellee-mother.

■ Appellant first challenges whether an obligation to pay existed. He asserts that he was not obligated to pay the expenses in light of John's unwillingness and inability to succeed in college. We reject this claim, as there is nothing in the agreement which excuses performance based upon the children's ability to succeed.

Other contracts of this sort have explicitly held the child to a minimum grade point average. *E.g., Leonard v. Leonard*, 353 Pa.Super. 604, 510 A.2d 827 (1986). In the instant case, however, there is no such clause, and we will not change the terms of this contract. *In re Estate of Breyer*, 475 Pa. 108, 379 A.2d 1305 (1977). The record reveals that both parties were represented by counsel when the contract was written. Reproduced record at 53(a). If a minimum level of proficiency had been intended, the parties should have included it in the agreement. In a written contract, the intent of the parties is the writing itself, and when the words are clear and unambiguous, the intent is to be determined only from the express language of the agreement. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 143, 302 A.2d 347, 351 (1973).

■ Similarly, the post-nuptial agreement makes no reference to the children's emancipation. Their status as adults is important in a typical support case, but their status as independent adults is not a release from the obligations of the post-nuptial agreement.

■ Appellant next argues that the trial court erred in refusing to uphold the oral agreement, later reduced to

writing, between John and appellant concerning the payment of college tuition, as a valid and binding agreement or novation which extinguished appellant's duties under the earlier agreement. The subsequent agreement states as follows:

Mr. John R. Hanna, III
11 Medbury Road
Wallingford, PA 19086
RE: College Expenses
Dear John:

In discussing this matter with your father, I am advised that you have reached an agreement regarding a support arrangement for you while enrolled at Widener. As such, I have drafted this letter, and I am requesting you and your father to approve and countersign it. The letter will serve as a binding contract regarding your college expenses.

Your father advises me that your agreement is as follows:

Mr. Hanna will pay to you the sum of $4,000.00 each year to be applied to your tuition expense at Widener so long as you maintain an average of "C" or above in each course you enroll in. Mr. Hanna will not be responsible to contribute towards your living, communting, [sic] or books and fee expenses at Widener University over and above the $4,000.00. This provision will continue until you reach the age of twenty-four (24), and then shall terminate. Should you become a part time student at Widener, should you transfer to another school, or should you terminate your college education at Widener, this Agreement will become null and void.

After you have reviewed this letter, please sign your name above where your name appears to indicate your agreement, and approval.

Very truly yours,
MICHAEL R. SWEENEY

| Signature | Signature |
| --- | --- |
| JOHN R. HANNA, III | JOHN R. HANNA, JR. |

The elements of a successful novation are "the displacement and *extinction of a valid contract,* the substitution for it of a valid new contract, ... and *the consent of the parties....*" *Buttonwood Farms, Inc. v. Carson,* 329 Pa.Super. 312, 317, 478 A.2d 484, 486 (1984) (emphasis in original). The party asserting a novation or substituted contract has the burden of proving the parties intended to discharge the earlier contract. *Id.*

In the present case, the record contains no clear evidence of the parties' intention to supplant the earlier agreement. Indeed, the record supports the contrary conclusion. An attempt to procure appellee-mother's consent was made, but failed. Reproduced record at 238(a). Further, as noted previously, John testified that he felt pressured to sign the letter sent by his father's attorney, claiming it was the only way he could continue to attend college. *Id.* at 178(a), 197(a). Moreover, John was a beneficiary of the original contract, not a party to it. It is thus clear that the subsequent agreement was not a novation, and the earlier agreement remains in effect.

The third issue raised is whether the trial court erred in awarding appellee-mother the sum of $6,840.00 for room and board for expenses which are traditionally associated with college dormitory and cafeteria costs. This issue concerns appellant's agreement to provide college costs for the children, as specified in paragraph 11 of the post-nuptial agreement set forth *supra.*

The clause specifically obligates appellant for his children's education. It also obligates him to pay for the room and board of the child when the child attends college. Appellant's argument requests that the court establish "room and board" as synomonous with "room and board at college." Without a showing of proof to the contrary, this court will not change the effect of a contract nor will we establish "room and board" as a term of art.

Based on the foregoing, we reject appellant's claims and affirm the trial court's award.

ORDER AFFIRMED.