609 A.2d 560

**Elbert Gary COOK, Jr., Appellant,**

v.

**Lanie S. Cook COVEY.**

Superior Court of Pennsylvania.

Argued Jan. 16, 1992.

Filed June 17, 1992.

354

C. Barry Buckley, West Chester, for appellant.

Daryl S. Endy, Paoli, for appellee.

Before ROWLEY, President Judge, and OLSZEWSKI and MONTEMURO, JJ.

ROWLEY, President Judge:

Elbert G. Cook, Jr., (Father) appeals from the order entered March 28, 1991, in the Court of Common Pleas of Chester County in this civil action. Father raises three issues for our review: (1) whether the trial court's enforcement of a 1980 separation agreement resulted in retroactive application of the Pennsylvania divorce code, (2) whether the trial court erred in not determining that a period of non-communication between Father and Elizabeth Lane Covey

(Elizabeth) resulted in estrangement sufficient to relieve Father of his duty to provide educational support, and (3) whether the trial court erred in requiring Father to compensate Mother for college expenses incurred without Father's approval. Having thoroughly reviewed the record and considered the arguments of the parties, we now affirm.

The facts of the case are as follows: Father and Lanie S. Cook Covey (Mother) were married in Texas on September 10, 1964. Elizabeth is the couple's only child. Father and Mother were divorced in Ohio on April 7, 1980, and Mother has remarried. The Ohio divorce decree incorporated "as though fully rewritten" a separation agreement entered into by the parties. The separation agreement contained the following clause:

9. *College Expenses* Husband agrees to pay college expenses of the minor child of the parties limited to tuition, room, board, books and monthly allowance at an amount that husband deems appropriate, at a college agreed upon by husband. These payments shall not cease merely because of child reaching majority.

(Reproduced Record at 11a).

Elizabeth performed extremely well in high school, and was awarded a National Merit Scholarship. She matriculated, with Father's approval, at the University of Texas in Austin in the fall of 1988. During Elizabeth's freshman year, Mother and Father became concerned about changes in Elizabeth's behavior. Elizabeth's lifestyle troubled her parents, and her academic performance declined. Accordingly, both parents visited Elizabeth in order to evaluate the situation. In addition, Father and Elizabeth discussed her behavior during her Christmas vacation. Father subsequently wrote Elizabeth a letter on January 4, 1989, memorializing the conversation and establishing specific behavioral guidelines for her to follow. In June, 1989, Father called Elizabeth regarding her poor grades for the spring semester. At that time, Elizabeth relayed her feelings of pressure and told Father to stop interfering in her life. Elizabeth also informed Father that she no longer wanted his

monetary support for college, and that Mother would pay for her college expenses. Pursuant to this conversation, Father withdrew all financial support and did not communicate with Elizabeth for approximately one year. During this period, Mother and her husband paid for all of Elizabeth's college expenses. When Father and Elizabeth reestablished communication, Father resumed making college payments.

Mother subsequently filed a petition seeking reimbursement of the money which she paid for Elizabeth's college expenses during the year in which Father did not contribute. A hearing was held on November 30, 1990, and the trial court entered an order on March 28, 1991 directing Father to pay Mother $11,784.64. This timely appeal followed.

We note initially that this case involves the enforcement of a post-nuptial agreement. The factual determinations in such cases are within the purview of the trial court, and "absent an abuse of discretion, the Superior Court will not usurp the trial court's fact-finding function." *Nitkiewicz v. Nitkiewicz,* 369 Pa.Super. 504, 507, 535 A.2d 664, 665 (1988) (citation omitted).

In the first issue for our review, Father contends that Pennsylvania Courts cannot enforce the separation agreement incorporated in the Ohio divorce decree since the divorce occurred prior to the enactment of the 1980 divorce code and its subsequent amendments. Specifically, Father claims that enforcement of the separation agreement under 23 Pa.C.S.A. § 3105 and 23 Pa.C.S.A. § 3705 (previously 23 Pa.C.S.A. § 401.1 and 23 Pa.C.S.A. § 506) would result in retroactive application of the divorce code.[1]

1. We note that Father's issue, as phrased and argued, does not address the applicability of § 3705 to agreements involving the payment of post-minority educational support, but only raises the issue of whether the divorce code was retroactively applied in violation of due process. Although Father attempts to challenge the application of § 3705 in the body of his brief, this issue was not preserved for our review. Accordingly, it is assumed for the purpose of this appeal that the statutory provision was correctly applied. However, we express

Pennsylvania courts have used the amended divorce code to enforce property settlement agreements entered into prior to the amendments, finding that such application does not retroactively alter the substantive rights of the parties, but merely provides a procedural mechanism for the enforcement of contractual rights. *Jackson v. Culp*, 400 Pa.Super. 519, 522, 583 A.2d 1236, 1238 (1990); *DeMatteis v. DeMatteis*, 399 Pa.Super. 421, 434, 582 A.2d 666, 672 (1990); *see also Cohen v. Cohen*, 352 Pa.Super. 453, 508 A.2d 561 (1986). In addition, the Pennsylvania Supreme Court has stated the following with regard to retroactive application of legislation:

> Retroactive application of new legislation will offend the due process clause if, balancing the interest of both parties, such application would be unreasonable ... Traditionally, retrospective laws which have been deemed reasonable are those which "impair no contract and disturb no vested rights, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and prosecuted."

*Krenzelak v. Krenzelak*, 503 Pa. 373, 382–83, 469 A.2d 987, 991 (1983) (citations omitted). We have applied the reasoning employed in the above-cited cases, and we find that application of the divorce code does not affect the substantive rights of the parties in violation of the due process clause. Accordingly, the trial court properly enforced the 1980 property agreement under current law.

In his second issue, Father contends that the trial court erred in not determining that Elizabeth unilaterally estranged herself from Father, thus relieving Father of his duty to provide educational support. The trial court permitted Father to assert estrangement as a defense for his failure to pay the college expenses, but found that the estrangement in the instant case was insufficient to relieve Father of his obligation under the agreement. (Trial court

no opinion as to whether or not § 3705 is applicable in cases involving post-minority educational support.

opinion, 3/28/91, p. 4, n. 2.) Although the trial court extended its inquiry into this issue, we are not persuaded that the issue of estrangement is pertinent to Father's obligation under the agreement.

Pennsylvania courts have held that a parent owes a limited duty to provide his or her child with a college education if the parent has the necessary funds and the child is willing and able to pursue higher education. *Sutliff v. Sutliff*, 515 Pa. 393, 407, 528 A.2d 1318, 1325 (1987). If the parent asserts that the child has willfully severed the parent/child relationship, the courts have held that the resulting estrangement may relieve the parent of the obligation to provide post-minority support. *Milne v. Milne*, 383 Pa.Super. 177, 556 A.2d 854 (1989). However, the child must have caused the estrangement unilaterally, and the estrangement must continue in the face of the parent's "concerted and good faith effort to establish and develop a relationship with his or her child." *Fager v. Fatta*, 395 Pa.Super. 152, 156, 576 A.2d 1089, 1091 (1990).

The cases in which estrangement is relevant, however, have been those cases in which a child has asked the court to judicially impose on a parent an obligation to provide post-minority educational support in the absence of a specific agreement by the parent to do so. *See Jackson v. Culp, supra; see also Sutliff v. Sutliff, supra; see also Commonwealth ex rel. Ulmer v. Sommerville*, 200 Pa.Super. 640, 190 A.2d 182 (1963) Since Father agreed, in writing, to pay Elizabeth's college expenses, the trial court did not judicially impose an obligation on Father. Rather, the court merely enforced an obligation that Father has already assumed. The agreement specifically imposes Father's obligation and is enforceable as written. The agreement is between Mother and Father. Elizabeth is a third-party beneficiary. As we cannot presume to know what concessions were made in the formation of the separation agreement, or what rights Mother may have relinquished in return for Father's promise to pay college expenses, we will not look beyond the written agreement. If the parties had

intended Father's obligation to provide college support to be contingent on a continuing relationship with Elizabeth, the qualifier presumably would have been included in the agreement. Accordingly, whether Father and Elizabeth were estranged does not affect Father's duty under the agreement with Mother.

Our Court has held that in enforcing post-nuptial agreements, the intent of the parties is to be derived from the written agreement, and if the agreement does not make a reference to the child's emancipation, "the child's status as [an] independent adult is not a release from the obligations of the post-nuptial agreement." *Schmucker v. Hanna*, 377 Pa.Super. 301, 305, 547 A.2d 379, 381 (1988); *See also Frank v. Frank*, 402 Pa.Super. 458, 464, 587 A.2d 340, 343 (1991). In addition, the child, as a beneficiary of her parent's agreement, cannot negotiate a new contract absent the consent of the parties to the original contract. *Schmucker v. Hanna, supra* 377 Pa.Super. at 307, 547 A.2d at 381–82. As Elizabeth was not a party to the agreement, she did not have the authority to shift her college expenses onto Mother, and Mother cannot be required to bear the responsibility for Father's misplaced reliance on Elizabeth's assertion.

In his final issue, Father asserts that the trial court erred in requiring him to compensate Mother for college expenses incurred without his approval. The college expense clause states that Father is to pay college expenses "limited to tuition, room, board, books and monthly allowance at an amount that husband deems appropriate, at a college agreed upon by husband." Father contends, therefore, that he should not be required to reimburse Mother for Elizabeth's college expenses incurred during the period in which Father did not contribute, as he did not approve the expenses as they were incurred. Father's argument lacks merit.

As noted by the trial court, it is not clear from the agreement whether the phrase "at an amount that husband deems appropriate" modifies all of the expenses, or just the

"monthly allowance." Once Father approved Elizabeth's choice of college, expenses such as tuition and books were no longer within Father's discretion. However, assuming *arguendo* that all expenses were subject to Father's approval, our review of the record does not reveal any evidence that Father found Elizabeth's expenses inappropriate. Father bases his claim on his lack of involvement in the decision making process, not on the appropriateness of the expenses incurred. Although Father did not have input into each and every expense, Father had agreed to Elizabeth's choice of college. As Father and Elizabeth were not in contact with each other for one year, Father was not consulted about her expenses. The record shows, however, that Father did not make any effort to be involved with Elizabeth's college life during that period. Furthermore, Father did not attempt to be involved in the decision making process, and he did not voice any objections to the expenses as they were incurred. Instead, as discussed previously, Father wrongly assumed that Mother would pay Elizabeth's expenses. If Father had abided by the terms of his separation agreement, he should have monitored Elizabeth's financial needs. As Father failed to meet his obligations under the separation agreement, the trial court acted well within its discretion in finding that Father's self-imposed lack of input did not excuse him from reimbursing Mother for her contributions toward Elizabeth's college related expenses.

Order affirmed.